# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DENNIS DUBUC and CAROL DUBUC,

     Plaintiffs,

v.                                                                    Case No. 08-13727

GREEN OAK TOWNSHIP, et al.,

     Defendants.

_____/

## OPINION AND ORDER DENYING PLAINTIFFS'
## "MOTION FOR PARTIAL SUMMARY JUDGMENT" AND
## GRANTING DEFENDANTS' "MOTION TO DISMISS"

Pending before the court are two motions. Plaintiffs Dennis and Carol Dubuc
filed a "Motion for Partial Summary Judgment" on March 10, 2009. Defendants
Township of Green Oak ("Green Oak"), Mark St. Charles, Michael Kruszewski, and Kim
Hunt (collectively "Defendants") filed a "Motion to Dismiss for Judgment on the
Pleadings, or in the alternative, for Summary Judgment" on April 27, 2009.[1] Having
reviewed the briefs in the case, the court concludes a hearing on the motion is
unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will
deny Plaintiffs' motion and grant Defendants' motion.

## I. INTRODUCTION

On August 28, 2008, Plaintiffs filed the instant lawsuit against Defendants Green
Oak; Mark St. Charles, in both his individual and his official capacity as Township

---

[1] Pursuant to this court's order, Plaintiffs also filed a "Response" on June 19,
2009 ("Standing Response" or "6/19/09 Resp.") regarding Defendants argument that
Plaintiffs lack standing to bring their procedural due process claim.

Supervisor; Michael Kruszewski, in both his individual and his official capacity as Building Zoning Administrator; and Kim Hunt, in her individual capacity.  In their amended complaint, Plaintiffs allege that Defendants have violated their constitutional rights to procedural due process under the Fourteenth Amendment to the United States Constitution by not allowing them to continue a non-conforming, legal use of Plaintiffs' property.  Plaintiffs request several types of relief, pursuant to 42 U.S.C. § 1983, including declaratory relief against Defendants in both their individual and official capacities (Pls.' Am. Compl. ¶¶ 27-37), damages against Defendant Township and the other Defendants in their individual capacities (Pls.' Am. Compl. ¶¶ 38-40), and an as-applied constitutional challenge to Defendant Township's ordinances (Pls.' Am. Compl. ¶¶ 42-46).  Plaintiffs also allege a §1983 retaliation claim against Defendant Kruszewski on the basis that Kruszewski retaliated against Plaintiffs, in violation of the First Amendment, for filing this lawsuit by denying certain building permits to Plaintiffs.  (Pls.' Am. Compl. ¶¶ 47-57.)

## II.  BACKGROUND

In February 2007, Plaintiffs purchased two properties, 10630 Rushton Road and 10638 Rushton Road, located in Green Oak, from the estate of Russell B. Armstrong. (Pls.' Mot. ¶ 7.)  Russell Armstrong himself had purchased the properties in August of 1966 and owned the properties until his death in November of 2005 when the properties became part of his estate.  (*Id.* ¶ 6; Pls.' Resp. Br. 3.)

Green Oak enacted its first zoning ordinance in 1967 ("1967 Ordinance") pursuant to the predecessor statute to the Michigan Zoning Enabling Act ("Act"), now codified at Michigan Compiled Laws §§ 125.3601, *et seq.*  (Defs.' Resp. ¶ 2.)  At that

2

time, the properties became zoned "Light Manufacturing."  (Defs.' Mot. ¶ 5.)  Light

Manufacturing permitted the manufacture of certain food products and fabrication, but

Defendants aver that it did not permit outdoor storage.  (Defs.' Resp. ¶ 2, Ex. 2.)  In

1973, Green Oak enacted a new zoning ordinance ("1973 Ordinance"), which zoned the

properties "Single-Family Residential," and which they remain zoned today  (Defs.' Mot.

¶ 7.)

      Both the 1967 Ordinance and the 1973 Ordinance created an exception for "legal

non-conforming" or "prior non-conforming uses."  (Defs.' Resp. ¶ Ex. 2, 4.)  Indeed,

Section 38-493 of Green Oak's current zoning ordinance states:

> Where, at the effective date of adoption or amendment of the ordinance
> from which this chapter is derived, a lawful use of land exists that is made
> no longer permissible under the terms of this chapter as enacted or
> amended, such use may be continued as long as it remains otherwise
> lawful. . . .
>
> If such nonconforming use of land ceases operation with the intent of
> abandonment for a period of more than six months, any subsequent use
> of such land shall conform to the regulations specified by this chapter for
> the district in which such land is located.

GREEN OAK CHARTER TWP., MI., MUN. CODE ch. 38, art. II, div. 3 § 38-493 (Jan. 31,

1993); (Defs.' Resp. Ex. 4).  Plaintiffs contend that the properties have continuously

been used, since prior to the 1967 Ordinance, for "both indoor and outdoor commercial

storage and manufacturing with retail sales as well as for a contractor storage

equipment yard with signage."[2]  (Pls.' Mot. ¶ 4.)  Plaintiffs therefore aver that they are

---

    [2] Both Plaintiffs and Defendants present evidence that the prior owner and users
of the subject properties were given violation notices regarding blight and the parking of
commercial vehicles on the property.  (*See, e.g.,* Pls.' Resp. at 7-8; Defs.' Mot. Exs. A-
C.)  Both sides also agree that in 2004 a state circuit court made a determination that
the properties were zoned residential only, and the neighbor of the prior owner, who

permitted to use the properties for these purposes, as prior, non-conforming uses of the property.[3]

After Plaintiffs purchased the properties on February 28, 2007, Plaintiff Dennis Dubuc inquired of Green Oak regarding the permissible uses of the properties.[4] (Pls.' Mot. ¶¶ 7-10.) On March 20, 2007, Dubuc sent a letter to Green Oak's Building Zoning Administrator, Defendant Michael Kruszewski, in which Dubuc requested a determination from Kruszewski regarding whether Dubuc was permitted to continue the alleged non-conforming commercial use of the property. (Pls.' Mot. ¶ 11, Ex. O.) Kruszewski replied in writing to Dubuc on April 2, 2007, stating that the properties have "historically been used as a commercial operation, most recently as an indoor storage. Thus, this use is the legal non-conforming use pursuant to our ordinance." (Pls.' Mot. ¶ 12, Ex. P.) The letter also stated ways in which Plaintiffs could apply to the Zoning Board of Appeals ("ZBA") for a variance to adjust the non-conforming use, but it did not

_____

was parking commercial vehicles on the properties was fined. (Pls.' Resp. Ex. ZZ4.) The prior owner was not a party to the state court action. (*Id.*)

[3] Plaintiffs primarily present evidence in the form of affidavits to support the existence of the prior, non-conforming use of the property, in which individuals testify that they have been familiar with the subject properties for approximately thirty years and have always known the properties to be used for commercial purposes. (*See generally* Pls.' Mot. Exs. A-O.)

[4] Plaintiffs assert that Dubuc visited Green Oak's Building Department following the purchase of the properties to inquire about building permits. Plaintiffs further assert that Kim Hunt and Lisa Brookins, two Green Oak officials, stated that the properties were zoned residential and could not be used for commercial purposes. (Pls.' Mot. ¶¶ 8-9.) Plaintiffs' motion states that the this occurred "[o]n or about March 5, 2008 (5 days after sale)"; however, the court takes Plaintiffs' motion to mean "March 5, 2007," given the additional information relating this event to the timing of the purchase of the properties. (*See id.* ¶ 8.)

4

inform Plaintiffs that they could directly appeal Kruszewski's determination to the ZBA pursuant to Green Oak ordinances.  (*Id.*)

On September 5, 2007, Plaintiffs applied to Green Oak's ZBA for a variance in the use of the properties.  (Pls.' Mot. ¶ 14.)  On October 16, 2007, the ZBA held a hearing on the matter, at which Dubuc testified and presented evidence during a public hearing.  (Pls.' Mot. ¶ 15, Ex. Z.)  However, the ZBA denied Plaintiffs' application for a variance.  (*Id.*)  Thereafter, Plaintiffs filed this suit pursuant to § 1983 on the basis that Defendants had denied them procedural due process.[5]

After Plaintiffs filed this lawsuit in federal court on August 28, 2008, Plaintiffs assert that Defendant Michael Kruszewski, Green Oak's Building Zoning Administrator, retaliated against them in violation of their First Amendment rights.  Plaintiffs also assert that Kruszewski directed zoning officials not to issue any further building permits for Plaintiffs' properties in retaliation for filing the lawsuit.  To support this contention, Plaintiffs submit two affidavits by contractors Steven Preston and Michael Kuehnl. (Defs.' Mot. Ex. 30-31.)  Preston states he applied for an electric permit for Plaintiffs' properties on September 5, 2008 and September 26, 2008.  (Defs.' Mot. Ex. 30 ¶¶ 3-4.) While he received the earlier permit, he states that the latter application was accepted and a permit was refused because Green Oak personnel had been "told not to issue

---

[5] The court recognizes, as Defendants correctly identify, that Plaintiffs request in their motion "declaratory relief and damages on the taking of property without just compensation."  (Pls.' Mot. ¶ 16.)  However, as Defendants also point out, Plaintiffs have only alleged a claim for violation of their procedural due process rights, have not asked leave of the court to amend, nor presented reasons why "justice so requires" any addition of a substantive due process claim.  *See* Fed. R. Civ. P. 15(a)(2); (Defs.' Resp. ¶ 16).

5

[any further] permits" for the property.  (*Id.* ¶¶ 3-6.)  In his affidavit, Kuehnl states he applied for a heating permit on October 10, 2008 but was told "no further permits could be issued for the above noted properties because of a lawsuit against the township concerning the property."  (Defs.' Mot. Ex. 31 ¶¶ 5-7.)  He left an application on the counter but never heard anything about it.  (*Id.* ¶ 10.)

Defendants maintain that neither Preston nor Kuehnl ever submitted completed applications, and that Defendants never refused to issue the permits to the contractors. (Defs.' Mot. Br. 16.)  Furthermore, Defendants state that since Plaintiffs filed the lawsuits, Defendants have issued several permits for construction on the subject properties, including: a plumbing permit on September 5, 2008 (Defs.' Mot. Ex. 28); an electric permit to Steven Preston on September 9, 2008 (Defs.' Mot. Ex. 29); another electric permit to Preston in January 2009 (Defs.' Mot. Ex. 32); and a mechanical permit to Radiant Energy Systems, Michael Kuehnl's company, in January 2009 (*id.*).

In their motion, Plaintiffs request that the court grant them summary judgment as to the alleged violations of their constitutional rights and permit the case to proceed to trial only on the question of damages.  In their motion, Defendants request that the court grant them summary judgment on the basis that Plaintiffs do not have a protected property interest and, in any case, Defendants provided Plaintiffs with constitutionally adequate due process.

6

## III.  STANDARD[6]

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor."  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial.  *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The moving party must first show the absence of a genuine issue of material fact.  *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex*, 477 U.S. at 323).  The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  They must put forth enough

_____

[6] Although Defendants bring their motion under alternative standards of review, both parties rely on evidence outside the pleadings, and therefore the court will address both motions under the Federal Rule of Civil Procedure 56 summary judgment standard.

7

evidence to show that there exists a genuine issue to be decided at trial. *Plant*, 212

F.3d at 934 (citing *Anderson*, 477 U.S. at 256). Summary judgment is not appropriate

when "the evidence presents a sufficient disagreement to require submission to a jury."

*Anderson*, 477 U.S. at 251-52 (1986).

## IV.  DISCUSSION

### A.  Procedural Due Process Claim

Plaintiffs argue that Defendants deprived them of their property interest in using

their property for commercial outdoor storage without procedural due process. In

response, Defendants contend that (1) Plaintiffs do not have a cognizable property

interest because they do not have a valid non-conforming use of the property, and, (2)

in any case, Plaintiffs received notice and an opportunity to be heard, such that

Defendants provided Plaintiffs due process.

The Fourteenth Amendment to the United States Constitution, prohibits a state

actor from "depriv[ing] any person of life, liberty, or property, without due process of

law," U.S. Const. amend. XIV, § 1, and a plaintiff may bring a § 1983 suit for violation of

procedural due process, *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). "To establish a

procedural due process claim pursuant to § 1983, plaintiffs must establish three

elements: (1) that they have a life, liberty, or property interest protected by the Due

Process Clause of the Fourteenth Amendment to the United States Constitution, (2) that

they were deprived of this protected interest within the meaning of the Due Process

clause, and (3) that the state did not afford them adequate procedural rights prior to

8

depriving them of their protected interest." *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999) (citing *Zinermon*, 494 U.S. at 125-26).

For purposes of § 1983 procedural due process claims, the Sixth Circuit follows "a two-part analysis in assessing the Plaintiff's . . . claim, asking first, whether the alleged deprivation involves a protected property interest, and second, whether 'the procedures attendant upon that deprivation were constitutionally sufficient.'" *Mator v. City of Ecorse*, 301 F. App'x 476, 479 (6th Cir. 2008) (quoting *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).  Accordingly, the court must first inquire whether Plaintiffs have shown that their claim involves a protected property interest before proceeding to the inquiry regarding whether any deprivation of the protected property interest was afforded constitutionally required due process.  *See Hamilton v. Myers*, 281 F.3d 520, 529 (6th Cir. 2002) (citing *Ferencz v. Hairston*, 119 F.3d 1244, 1247 (6th Cir. 1997)).

### 1.  Property Interest

"Property interests are not created by the Fourteenth Amendment, rather they are created and defined by independent sources, such as state law." *Hamilton*, 281 F.3d at 529 (citing *Brotherton v. Cleveland*, 923 F.3d 477, 480 (6th Cir. 1991)).  The Michigan Supreme Court in *Heath v. Sall*, 502 N.W.2d 627 (Mich. 1993), stated that "[a] prior nonconforming use is a vested right in the use of particular property that does not conform to zoning restrictions, but is protected because it lawfully existed before the zoning regulation's effective date." *Id.* at 629 (citing *Dusdal v. City of Warren*, 196 N.W.2d 778, 781 (Mich. 1972)).  Both parties agree that, under Michigan law, a prior,

9

non-conforming use is a protected property right and is accordingly subject to due

process protections.[7]  (Defs.' Mot. Br. 4.)

## 2.  Deprivation

Once a plaintiff has identified a protected property interest, the plaintiff must also

ordinarily show a deprivation of the property interest.  *See Hahn*, 190 F.3d at 716 (citing

*Zinermon*, 494 U.S. at 125-26).  Often courts do not separately discuss this requirement

because the existence and timing of the claimed deprivation is not usually disputed.

*See, e.g., Mator*, 301 F. App'x at 479 (quoting *Kentucky Dep't of Corr.*, 490 U.S. at 460).

Here, however, Plaintiffs have made varying statements about when and whether

Defendants made a determination that deprived Plaintiffs of a protected property

interest.  In their reply, Plaintiffs stated: "Green Oak Township's first official

determination of a change in the nonconforming use of the property was December 17,

-----

[7] Both parties also spend much of their briefs arguing about whether Plaintiffs
themselves currently possess this property right and what exactly it encompasses.
However, a plaintiff need not show that he in fact possesses the property right at issue
in order to bring a § 1983 procedural due process claim.  *See Bd. of Regents of State
Colleges v. Roth*, 408 U.S. 564, 577-78 (1972).  Rather, a plaintiff must have

> more than an abstract need or desire for it.  He must have more than a
> unilateral expectation of it.  He must, instead, have a legitimate claim of
> entitlement to it.  It is a purpose of the ancient institution of property to
> protect those claims upon which people rely in their daily lives, reliance
> that must not be arbitrarily undermined.

*Id.* at 577.  The core analysis of a procedural due process claim questions whether, in
the determination that deprived a plaintiff of a claimed protected property right, he was
afforded due process.  *See id.* at 577-78.  The inquiry is not whether this determination
itself was correct.  *See id.* at 577 ("Thus, the welfare recipients in Goldberg v. Kelly . . .
had a claim of entitlement to welfare payments that was grounded in the statute defining
eligibility for them.  The recipients had not yet shown that they were, in fact, within the
statutory terms of eligibility.  But we held that they had a right to a hearing at which they
might attempt to do so.").

2002 when zoning enforcing officer was directed to issue violation notices to persons who would park commercial vehicles on the property." (Pls.' Reply at 7.)  Plaintiffs support this contention by showing notices of zoning violations given to the prior owner of the properties for blight violations and the storing of commercial vehicles on the properties in violation of zoning regulations.  (*See, e.g.,* Pls.' Resp. at 7-8; Defs.' Mot. Exs. A-C.)  In addition, in 2004 a state circuit court made a determination that the properties were zoned residential only, and the neighbor of the prior owner, who was parking commercial vehicles on the properties, was accordingly fined.  (Pls.' Resp. Ex. ZZ4.)  The prior owner was not a party to that state court action.  (*Id.*)

In their motion for summary judgment, Defendants initially argued that the determination which allegedly deprived Plaintiffs of their property interest occurred April 2, 2007 when Defendant Kruszewski sent Plaintiff Dennis Dubuc a letter informing him that the property had "historically been used as a commercial operation, most recently as an indoor storage.  Thus, this use is the legal non-conforming use pursuant to our ordinance." (Pls.' Mot. ¶ 12, Ex. P.)  However, Defendants additionally argue, if the relevant deprivation determination for this court's consideration occurred in 2002 or 2004, the Plaintiffs lack standing to bring this suit because they did not own the subject properties at the time and therefore have not suffered a deprivation.  (Defs.' Reply at 3-4.)

Because Defendants' argument regarding Plaintiffs' lack of standing was raised in Defendants' final reply brief and Plaintiffs did not have the opportunity to respond to Defendants' argument, the court ordered Plaintiffs to file a response to the argument. More important, however, the issue of standing is one that determines whether a court

11

is permitted to adjudicate a case. *Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("In its

constitutional dimension, standing imports justiciability: whether the plaintiff has made

out a 'case or controversy' between himself and the defendant with the meaning of Art.

III. This is the threshold question in every federal case, determining the power of the

court to entertain the suit."). In their Standing Response, Plaintiffs aver that "Plaintiffs

do not base their procedural due process claim on events occurring in 2002 or 2004.

Plaintiffs base their due process claim on the events outlined in their amended

complaint and the exhibits, affidavits and deposition testimony filed with court." (6/19/09

Resp. at 2.) Plaintiffs also state that:

> Plaintiffs do not claim that the nonconforming use of the property was
> legally invalidated in 2002 or 2004. Plaintiffs have simply brought to this
> Court's attention in 2004 [that Defendants] made an official determination
> concerning the property's nonconforming use that was applied to others
> but not applied to the owner of the property.

(*Id.* at 3.) Plaintiffs further appear to argue that Defendants must have made some

determination regarding the non-conforming use while the prior owners had possession

of the subject properties in order to issue the parking and other zoning violations.

Nonetheless, Plaintiffs state in their concluding section that "[p]rior to April 2, 2007,

there had been no official determination by Green Oak Township that the property in

question had lost its commercial non-conforming use." (6/19/09 Resp. at 7.)

 The court finds that the relevant date of the determination resulting in deprivation

to Plaintiffs of a protected property interest is April 2, 2007. On this date, Defendant

Kruszewski replied in writing to Defendant Dennis Dubuc's request for a determination,

stating that the properties have "historically been used as a commercial operation, most

recently as an indoor storage. Thus, this use is the legal non-conforming use pursuant

12

to our ordinance." (Pls.' Mot. ¶ 12, Ex. P.)  In addition, this is the only deprivation that is relevant to Plaintiffs themselves.  Any earlier deprivation would have been made with respect to the prior owners of the subject properties, rather than Plaintiffs.[8]  Despite their contradicting statements, Defendants also appear to agree that this is the only relevant date for Plaintiffs' own procedural due process claim, even if other determinations were made during the earlier dates with respect to the prior owners of the subject properties.

### 3.  Notice and an Opportunity to be Heard

Once the court has found that Defendants deprived Plaintiffs of a protected property interest, Plaintiffs still have to show that they were denied due process with respect to that April 2, 2007 determination.  Plaintiffs stated in their motion, "Defendants cannot offer any evidence that Plaintiffs were afforded a hearing before or after the decision was made to terminate their nonconforming use." (Pls.' Mot. Br. 9.)  In

---

[8] A plaintiff cannot acquire standing by raising the rights of a third party, such as the prior owner of property, unless the plaintiff can show that he has:

> suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests.

*Powers v. Ohio*, 499 U.S. 400, 411 (1991); *see also United States Dep't of Labor v. Triplett*, 494 U.S. 715, 719-20 (1990).  Not only have Plaintiffs failed to assert that they satisfy these requirements, the court knows of no authority by which Plaintiffs can assert the due process rights of the prior owner of Plaintiffs' property.  "Courts do not decide cases based on the rights of third parties because 'it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not.'" *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1137 (6th Cir. 1986) (quoting *Allstate Ins. Co. v. Wayne County*, 760 F.2d 689, 693 (6th Cir. 1985) (internal quotations omitted)).

response, Defendants first argued that Plaintiffs received due process in conformance

with Michigan law and Green Oak ordinances, which met constitutional requirements,

because they had notice of the April 2, 2007 determination.  (Defs.' Resp. Br. 14.)

Plaintiff Dennis Dubuc solicited the determination by Defendant Kruszewski, and

Plaintiffs had the opportunity to be heard regarding the determination by appealing the

April 2, 2007 determination.  (*Id.*)  In reply to this, Plaintiffs did not argue that this

process was insufficient; instead they argued that the first determination[9] regarding the

non-conforming use of their property occurred December 17, 2002 when Kim Hunt, on

behalf of Green Oak issued violation notices to the previous owner.  (Pls.' Reply Br. 17.)

Generally, procedural due process requires a state actor to "provide a person

with notice and an opportunity to be heard before depriving that person of a property or

liberty interest."  *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005)

(citing *Thompson v. Ashe*, 250 F.3d 399, 407 (6th Cir. 2001)).  The issue for the district

court to address is: "whether plaintiffs were afforded the process due to protect their

property rights."  *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001).  While the

formality and procedural requirements may vary depending on the property interest at

issue, "in the context of administrative zoning decisions, the process must provide

sufficient notice to affected landowners and an opportunity to be heard in opposition."

---

[9] Some confusion has arisen from use of the word "determination."  Plaintiffs
apparently argue from logic that the actual determination that the prior, non-conforming
use had been abandoned must have occurred before the April 2, 2007 letter because
zoning violations were issued as early as 2002.  To the extent that Plaintiffs argue that
an earlier determination was made, they have made no argument that they have
standing to bring the claim of a third party.  Any deprivation to Plaintiffs themselves of a
protected property interest occurred on April 2, 2007; any earlier deprivation would not
have been suffered by Plaintiffs but by the prior owners of the subject properties.

*Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001) (citing *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 896 (6th Cir. 1991)).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mator*, 301 F. App'x at 480 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

Plaintiffs do not argue that they did not receive notice and an opportunity to be heard regarding Defendant Kruszewski's April 2, 2007 determination; rather they argue that the prior owner of the subject properties did not receive notice and an opportunity to be heard before a determination was made in 2002 or 2004 to terminate the non-conforming use of the properties.  (Pls.' Reply Br. 17.)  Plaintiffs had notice of an impending determination regarding the existence and extent of any non-conforming use of the properties permitted Plaintiffs because Plaintiff Dennis Dubuc himself requested that Kruszewski, as Building Zoning Administrator of Green Oak, and authorized by Green Oak's ordinances to enforce zoning rules, make such a determination.[10]  (Defs.' Resp. Ex. 12.)  Indeed, Plaintiffs stated in their amended complaint that Plaintiff Dennis Dubuc "put together information about the history of the property and presented it to Defendant Kruszewski with a cover letter on March 20, 2007, asking for Kruszewski's position to be put in writing."  (Am. Compl. ¶ 18.)  Plaintiffs do not aver that they did not have notice regarding this determination, nor can they now claim the same.  *See United*

---

[10] Green Oak's current zoning ordinance authorizes Defendant Kruszewski, as Building Zoning Administrator, "to administer and enforce the provisions" of Green Oak's zoning ordinances.  GREEN OAK CHARTER TWP., MI., MUN. CODE ch. 38, art. II, div. 3 § 38-41 (Jan. 31, 1993); (Defs.' Resp. Ex. 4).

*States v. McGovney*, 270 F. App'x 386, 378 (6th Cir. 2008) (stating that actual notice is

sufficient to satisfy the requirements of procedural due process).

Second, under Green Oak's ordinances Plaintiffs had the opportunity to be heard

regarding their alleged non-conforming use.  Green Oak provides for the appeal of

zoning determinations[11]:

> (a) An appeal may be taken to the ZBA by any person . . . affected by a
> decision of any body charged with enforcement of this chapter or of an
> administrative official of the department of building and zoning concerning
> the administering and enforcing of the provisions of this chapter. . . .
>
> (b) An appeal shall stay all proceedings in furtherance of the action
> appealed from. . . .
>
> (c) The ZBA shall select a reasonable time and place for the hearing of the
> appeal and give notice thereof to the parties, and shall render a decision
> on the appeal without unreasonable delay.  The ZBA shall state the
> grounds of each determination.  Any person may appear and testify at the
> hearing, either in person or by duly authorized agent or attorney.

GREEN OAK CHARTER TWP., MI., MUN. CODE ch. 38, art. II, div. 3 § 38-94 (Jan. 31, 1993);

(Defs.' Resp. Ex. 4).  Additionally, decisions from the ZBA are appealable to Michigan

state court: "[t]he decision of the zoning board of appeals shall be final.  A party

---

[11] This is established pursuant to the Michigan Zoning Enabling Act ("Act"), which grants authority to certain municipalities to enact zoning ordinances subject to specific provisions.  *See* Mich. Comp. Laws §§ 125.3601, *et seq.*  The Act gives provides that zoning boards of appeals, established pursuant to the Act, "shall hear and decide questions that arise in the administration of the zoning ordinance. . . . It shall hear and decide appeals from and review any administrative order, requirement, decision, or determination made by an administrative official or body charged with enforcement of a zoning ordinance adopted under this act."  Mich. Comp. Laws § 125.3603(1).  The Act prescribes certain procedures: "An appeal to the zoning board of appeals stays all proceedings in furtherance of the action appealed."  Mich. Comp. Laws § 125.3604(3).  "If the zoning board of appeals receives a written request seeking an interpretation of the zoning ordinance or an appeal of an administrative decision, the zoning board of appeals shall conduct a public hearing on the request."  Mich. Comp. Laws § 125.3604(5).

16

aggrieved by the decision may appeal to the circuit court for the county in which the

property is located." Mich. Comp. Laws § 125.3605.

Plaintiffs had the opportunity to appeal Kruszewski's determination to the ZBA,

but they chose not to avail themselves of this opportunity to be heard. Nonetheless,

because they had the opportunity to be heard, to testify, to be represented by an

attorney before the ZBA, and to appeal any adverse decision of the ZBA to a state

circuit court, Plaintiffs were afforded due process.[12]   *See Brody v. City of Mason*, 250

F.3d 432, 437-38 (6th Cit. 2001) (finding due process requirements for a zoning hearing

were satisfied when the plaintiff had an opportunity to testify at at least one hearing, the

hearing was conducted by an impartial tribunal, and the opportunity to seek review of

the decision was provided). Due process is not violated when Plaintiffs simply do not

avail themselves of the opportunity to have a hearing on their claim. Furthermore, had

Plaintiffs taken the opportunity to be heard by appealing to the ZBA, any enforcement of

the April 2, 2007 determination would have been stayed any further enforcement action

against Plaintiffs' property until the ZBA could make its own determination. *See* GREEN

OAK CHARTER TWP., MI., MUN. CODE ch. 38, art. II, div. 3 § 38-94 (Jan. 31, 1993); (Defs.'

Resp. Ex. 4). This would have provided Plaintiffs with a hearing before any deprivation

of their claimed non-conforming use occurred or reached finality. *See Mathews v.*

---

[12] Plaintiffs argue that they were not informed regarding this opportunity to appeal
to the ZBA by Kruszewski's April 2, 2007 letter, even though the letter informed them of
the possibility of asking the ZBA for a variance in the use of their properties. However,
any lack of inquiry undertaken by Plaintiffs to determine their options does not negate
the opportunity that Plaintiffs had for the hearing or violate due process. Moreover,
Dennis Dubuc stated repeatedly in his deposition that he was familiar with zoning
appeal procedures. (*See, e.g.*, Defs.' Reply Ex. 35, 45-48.)

*Eldridge*, 424 U.S. 317, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("'Due process is flexible and calls for such procedural protections as the particular situation demands.'")).  Because Plaintiffs have not shown that they were not afforded notice and an opportunity to be heard, Plaintiffs cannot maintain a claim for a violation of procedural due process, and the court will grant Defendants' motion.

## B.  Retaliation Claim

Plaintiffs also assert that Michael Kruszewski retaliated against them in violation of their rights under the First Amendment to the United States Constitution.[13]  In particular, Plaintiffs assert that after they filed this lawsuit, Kruszewski directed that no further building permits were to be issued to Plaintiffs.  Defendants argue that Plaintiffs have not been denied any completed permit applications since they filed the lawsuit and that for this reason Plaintiffs' claim is unripe.  (Defs.' Mot. ¶¶ 42-46.)

A First Amendment retaliation claim requires that a party show that "(1) the plaintiff engaged in constitutionally protected speech, (2) he was subjected to adverse action or was deprived of some benefit, and (3) the protected speech was substantial or a motivating factor in the adverse action."  *Baar v. Jefferson County Bd. of Educ.*, 311 F. App'x 817, 820 (6th Cir. 2009) (quoting *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2004)) (internal quotation marks omitted).  As with ordinary § 1983 claims, a claim for retaliation must also be directed at someone "under color of any statute, ordinance, regulation, custom or usage," 42 U.S.C. § 1983, to satisfy the "under color of state law"

---

[13] Plaintiffs also filed this retaliation claim against Defendants former attorney, Michael Rosati; however, after Mr. Rosati filed a motion for summary judgment–in which Plaintiffs had refused to concur, *see* E.D. Mich. LR 7.1(a), Plaintiffs stipulated to Mr. Rosati's dismissal from this lawsuit.

18

requirement.[14]  *McCurdy v. Montgomery County, Ohio*, 240 F.3d 512, 520 (6th Cir.

2001).

In determining whether a claim is ripe for review, the court addresses three

factors:

> (1) the likelihood that the harm alleged by the plaintiffs will ever come to
> pass;
>
> (2) whether the factual record is sufficiently developed to produce a fair
> adjudication of the merits of the parties' respective claims; and
>
> (3) the hardship to the parties if judicial relief is denied at this stage in the
> proceedings.

*Kentucky Press Ass'n, Inc. v. Kentucky*, 454 F.3d 505, 509 (6th Cir. 2009).  The Sixth

Circuit has found that a finality determination in connection with "various constitutional

claims arising out of land use disputes requires that the 'governmental entity charged

with implementing the regulations must have reached a final decision regarding the

application of the regulations to the property at issue.'" *Grace Cmty. Church v. Lenox

Twp.*, 544 F.3d 609, 615 (6th Cir. 2008) (quoting *Insomnia, Inc. v. City of Memphis,

Tenn.*, 278 F. App'x 609, 612 (6th Cir. 2008)).  Thus, in order for a retaliation claim

regarding land use to be ripe, there must be a final determination by the "governmental

entity charged with implementing the regulations."  *Id.* at 615-16 (stating that the finality

requirement served the "need for development of a full record, preference for avoiding

unnecessary judicial entanglement in constitutional issues, and preference for allowing

---

[14] The Supreme Court has made clear that in a §1983 action, "the statutory requirement of action 'under color of state law' and the 'state action' requirement of the Fourteenth Amendment are identical."  *Lugar v. Edmondson Oil Co.*, *Inc.*, 457 U.S. 922, 929 (1982).

local resolution of land use disputes"). Plaintiffs have shown no such denial or other

final decision in this case. Indeed, Plaintiff Dennis Dubuc stated at his deposition that

Defendant Kruszewski had not yet denied either of the permits claimed to substantiate

Plaintiffs' retaliation claim.[15] (Defs.' Reply. Ex. 35 at 134:7-10.) Plaintiffs offer no other

answer to Defendants' ripeness argument.[16] Therefore, the court will grant Defendants'

motion as to this claim.

## IV.  CONCLUSION

For the reasons stated above, IT IS ORDERED that Plaintiffs' "Motion for Partial

Summary Judgment" [Dkt. # 35] is DENIED.

IT IS FURTHER ORDERED that Defendants' "Motion to Dismiss for Judgment

on the Pleadings, or in the alternative, for Summary Judgment" [Dkt. # 52] is

GRANTED.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  June 26, 2009

---

[15] While the affidavits submitted by Plaintiffs aver that Defendants refused to process the permits, there is no further evidence of this, and no final decision. Nor do Plaintiffs offer any.

[16] In their response, Plaintiffs rely on the fact that the court permitted them to amend their complaint on the basis that Plaintiffs had stated a prima facie case. (*See* 12/15/2008 Order.) However, Plaintiffs cannot rely on this procedural history when confronted with the arguments raised by Defendants.

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 26, 2009, by electronic and/or ordinary mail.

s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522