# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DENNIS DUBUC and
CAROL DUBUC,

    Plaintiffs,

v.                       Case No. 08-13727

GREEN OAK TOWNSHIP, et al.,

    Defendants.
                                       /

## OPINION AND ORDER
## IMPOSING SANCTIONS UPON PLAINTIFFS AND PLAINTIFFS' COUNSEL
## PURSUANT TO 28 U.S.C. § 1927 AND THE INHERENT POWER OF THE COURT

On March 11, 2010, the court issued an order denying Defendants' motion for sanctions but ordering Plaintiffs and Plaintiffs' counsel to show cause why the court should not act *sua sponte* and impose sanctions under 28 U.S.C. § 1927 and the inherent powers of the court. On April 7, 2010, Plaintiffs and Plaintiffs' counsel timely responded to the order to show cause, and on April 19, 2010, Defendants replied to the response. Upon consideration of the response to the order to show cause and Defendants' reply, the court concludes that sanctions are appropriate in this case. The court will impose sanctions upon the individual Plaintiffs under the court's inherent powers and will impose sanctions upon Plaintiffs' counsel under § 1927.

## I. BACKGROUND

On August 28, 2008, Plaintiffs filed this lawsuit alleging that Defendants violated their constitutional right to procedural due process under the Fourteenth Amendment by not allowing them to continue a nonconforming, legal use of Plaintiffs' property. While the case was in progress, Plaintiffs amended their complaint to add a claim of

retaliation, under 42 U.S.C. § 1983, against Defendant Kruszewski and Michael Rosati, the attorney then representing Defendant township in the instant litigation. Plaintiffs claimed in the amended complaint that Kruszewski and Rosati retaliated against them for filing this lawsuit in that they denied certain building permits.

Not long after Rosati filed a motion for summary judgement, the parties stipulated to a dismissal of the claim against Rosati with prejudice but "without costs." Later, on June 26, 2009, the court dismissed the balance of Plaintiffs' amended complaint because it failed to state a claim.

After the case was dismissed, Defendants filed a motion seeking sanctions and attorneys fees pursuant to Federal Rule of Civil Procedure 11 and a motion to require an appeal bond pursuant to Federal Rule of Appellate Procedure 7. The court denied both motions for reasons explained in a comprehensive order, but at the same time it directed Plaintiffs and Plaintiffs' counsel to show cause why they should not be sanctioned under 28 U.S.C. § 1927 and the inherent power of the court for maintaining the claim against the township's attorney Rosati. Plaintiffs and their counsel responded to the show cause order and Defendants replied to the response

## II. STANDARD

Under 28 U.S.C. § 1927, an attorney may be sanctioned if there is "a showing of something less than subjective bad faith, but something more than negligence or incompetence. Thus, an attorney's behavior is sanctionable when he intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings." *Followell v. Mills*, 317 F. App'x 501, 511 (6th Cir. 2009). The court may also impose sanctions pursuant to its inherent powers if it makes

a finding that a litigant's conduct was in bad faith or tantamount to bad faith. *See First Bank of Marietta v. Hartford Underwriters*, 307 F.3d 501 (6th Cir. 2002).

### III. DISCUSSION

The court explained in its order to show cause,

> It is not insignificant that Rosati was not a Township employee or officer, but only a private practice attorney engaged to represent the Township. A private person, who is not ordinarily liable under § 1983, may become a state actor for purposes of § 1983 if his conduct is "fairly attributable" to the state, *see Memphis, Tenn. Area Local v. City of Memphis,* 361 F.3d 898, 905 (6th Cir. 2004) (setting forth tests for determining whether a private person's conduct is fairly attributable to the state: public function, state compulsion, and nexus), or if there is cooperation or concerted activity between the state and private actors. *Id.*; *see also Hooks v. Hooks,* 771 F.2d 935, 943-44 (6th Cir. 1985) (stating test for proving a civil conspiracy). A looming question to the court is whether Plaintiffs were possessed of any information establishing that Rosati's conduct was fairly attributable to the Township, i.e., Rosati acting as the Township, as opposed to acting merely as the Township's attorney and in that capacity providing advice. The court is aware of no other civil case in which a defendant's attorney was made a party defendant on the basis of things the attorney allegedly said to the client during the course of the litigation. Perhaps Plaintiffs will more fully inform the court in the course of developing their response. The manner and timing in which the claim was asserted and in which it was voluntarily dismissed suggests that it was brought to serve as a strategic gambit aimed at ridding Plaintiffs of the incumbent opposing counsel rather than in good faith. The lengthy history of litigation against the Township initiated by Plaintiff DuBuc may not be insignificant in this regard as well.

Plaintiffs raise four basic arguments in response to the court's show cause order: (1) sua sponte sanctions based on a claim that was dismissed without costs nine months earlier are "unusual" and "unfair"; (2) Plaintiffs had sufficient evidence to maintain a retaliation claim against Rosati; (3) Defendants named Rosati as "the director of their actions" and therefore should have expected that he would be named in the lawsuit; and (4) that the timing of Rosati's stipulated dismissal was only because the

3

Township had issued the sought permits and that damages attributable to Rosati "became mitigated."[1]

## A. Dismissal Without Costs and Timing

Plaintiffs argue that it would be error to assess attorneys fees after the court signed an order of dismissal "without costs." The argument has merit. Because the court agreed to endorse and issue an order dismissing the claim against Rosati without costs, Plaintiffs argue that it is inappropriate to assess them "costs" now in the form of attorneys fees.

After an answer or defendant's motion for summary judgment has been filed, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). In dismissing the Rosati claim the court implicitly determined that "without costs" was a proper term of the dismissal. Plaintiffs argument assumes, of course, that "costs" includes attorneys fees. The issue of whether "costs" include attorneys fees is complicated, and the answer varies depending on the circumstances. In *Fulps v. City of Springfield*, the Sixth Circuit held

---

[1] Plaintiffs raise a fifth point, not entirely responsive to the order to show cause: "if Rosati takes this Court's invitation to participate in this sua sponte inquiry, it should be deemed a motion by Rosati to vacate the stipulated order of dismissal. The Dubucs should be permitted to continue litigating their retaliation claim against Rosati." Rosati did not file a reply as did the other Defendants. Even if Rosati had filed a reply, however, Plaintiffs' argument is easily rejected. Plaintiffs cite no law in support of the contention that merely replying to Plaintiffs' response can properly be construed as a motion to vacate. In view of the court's conclusion, *infra,* that Plaintiffs brought and maintained the claim against Rosati in bad faith and without factual support, Plaintiffs would have no better factual support for a retaliation claim against Rosati presently than they did originally. It would be factually inappropriate to allow the resurrection of such a claim. In fact, viewing Plaintiffs fifth point as a poorly veiled threat to reinitiate a frivolous claim against Rosati reveals it as representative of the inappropriate game-playing conduct by Plaintiffs and their counsel that supports the court's conclusion today.

that the term "costs" in Federal Rule of Civil Procedure 68 includes attorneys fees in civil rights cases. 715 F.2d 1088, 1091-92 (6th Cir. 1983). The court relied on a concurring opinion by Justice Powell: because the term "costs" is not defined in the rules of civil procedure, it, "as used in Rule 68, should be read to include attorney's fees where fees are authorized by the substantive statute at issue in the litigation." *Id.* at 1091-92, 1095. This logic applies equally well to the use of costs in defining the terms of a voluntary dismissal. Accordingly, the court agrees that an award of attorneys fees associated with the dismissed claim, without modification to the order of dismissal of Rosati, is inappropriate at this time.

This argument does not necessarily preclude sanctions of a type other than attorneys fees. § 1927 authorizes an award of costs and expenses –including attorneys fees– in an amount equal to the excess expenses caused by the sanctionable conduct. Because the order of dismissal "without costs," an award under § 1927 appears to be prohibited by the dismissal. Plaintiffs admit, however, that even after dismissal and resolution of this case's merits, the court retains jurisdiction to sanction the parties. (Pls.' Resp. to Order to Show Cause, 12). Accordingly, the order of dismissal does not prevent the court from imposing various sanctions based on authority other than § 1927.

Plaintiffs also argue that the nine-month delay between the dismissal of the Rosati claim and the court's issuance of the show cause order renders sanctions based on that claim "unfair" and inappropriate. In support of this argument, Plaintiffs cite Supreme Court law, issued before the 1993 amendments to Rule 11, relating to the timeliness of a Rule 11 motion for sanctions. They further argue that they are "unable to

5

ascertain why this reasoning would be inapplicable to sanctions under the Court's inherent authority or § 1927." (Pls.' Resp. to Order to Show Cause, 13.) The Sixth Circuit has provided guidance concerning the timeliness of sanction motions. The court looks first to the district's local rules. While the Eastern District of Michigan has a local rule that a motion for attorneys fees must be filed within twenty-eight days from the entry of judgment, E.D. Mich. LR 54.1.2, there is no local rule governing the filing of a motion for sanctions.

In the absence of a local rule, the Sixth Circuit has relied on a "reasonableness" test that asks whether the delay causes (1) unfair surprise; (2) prejudice to the affected; or (3) piecemeal appeals. *In re Ruben*, 825 F.2d 977, 981-82 (6th Cir. 1987). First, there is no evidence of surprise here because the court went out of its way to caution Plaintiffs and their attorney that even though it would allow the complaint to be amended if "actual vexatiousness or similar bad faith on the part of either party be later provably revealed, a corresponding motion for sanctions may well be appropriate." (Opinion and Order Granting Leave to File First Am. Compl. 6 n.1.) And while imposition of attorneys fees after the issuance of the order of voluntary dismissal of the Rosati claim "without costs" might have surprised Plaintiffs, nothing in the order of dismissal suggests that Plaintiffs would be free from the threat of sanctions if "bad faith" were to "be later provable." The court granted Plaintiffs' motion to amend adding the Rosati claim on December 14, 2010, warning that "later provable" bad faith could be sanctioned. Nearly six months later, Defendant Rosati filed a motion for summary judgment, and rather than responding, Plaintiffs stipulated to the voluntary dismissal. The court allowed the dismissal "without costs," but in doing so did not divest itself of authority to impose

sanctions in the event that provable bad faith concerning the Rosati claim were later shown.  Because of Plaintiffs' decision to not respond to Rosati's motion for summary judgment, the court was not required or able to evaluate the factual basis for the claim against Rosati.  Defendants raised the issue in their sanctions-motion briefing, (Defs.' Reply to Resp. to Mot. for Att'ys Fees 6), and the court took action, being unsatisfied with Plaintiffs' response.  It is therefore untenable for Plaintiffs to now maintain that the court's concern about the Rosati claim at this point in the litigation could cause them *unfair* surprise.

Second, Plaintiffs offer no argument that they were prejudiced by the delay. They do not suggest that they changed their position in reliance on a belief that they would not be sanctioned, nor do they argue that their ability to respond was impeded by the delay.

Third, although Plaintiffs' appeal appears to be fully briefed, the case is still pending and there remains a reasonable possibility that if Plaintiffs wish to appeal from this order, that action could be consolidated with the pending appeal, as was done with one of Plaintiff's previous federal cases.

There is also support for ruling that the court's imposition of sanctions is timely in *Fulps v. City of Springfield, Tenn.*, 715 F.2d 1088 (6th Cir. 1983).  In *Fulps*, the Sixth Circuit applied the equitable doctrine of laches to determine whether a motion for attorneys fees was timely.  The *Fulps* court allowed a party to seek attorneys fees eight months after the entry of judgment because there was no evidence of prejudice to the sanctioned party.  As in *Fulps,* there is here no indication of prejudice.

Finally, the court is not persuaded that the timeliness cases and the rules noted above apply to a court considering sanctions *sua sponte* after a timely motion for sanctions and attorneys fees. The local rule applies to only "motion[s] for attorney[s] fees." The Seventh Circuit has refused to apply timeliness requirements to a district court's *sua sponte* sanctions imposed after a party's timely motion for sanctions. In *Burda v. M. Ecker Co.*, Plaintiff Burda settled an administrative claim pursuant to a settlement agreement. Defendant produced two checks to plaintiff's attorney, Ruth Seltzman, one for plaintiff and one for attorney's fees. 2 F.3d 769, 771 (7th Cir. 1993). Seltzman, however, refused to accept the check or provide defendant with her tax identification number. *Id.* at 771-72. Seltzman then in state court filed a suit –which Defendant quickly removed to federal court– alleging that defendant had refused to tender payment under the settlement agreement. *Id.* at 772. Seltzman did not herself sign any of the filed papers but had another attorney, Kenneth Flaxman, act in her stead. *Id.* The district court dismissed the case and granted Defendant Ecker's motion for sanctions against Burda. *Id.* The Seventh Circuit affirmed the dismissal but reversed and remanded relative to the sanctions imposed on Burda, because he was only a nominal party to the suit. *Id.* Then, on remand, the district court imposed *sua sponte* sanctions, based on Rule 11, against Flaxman. *Id.* at 773. Flaxman argued that the court's *sua sponte* sanctions were untimely under the Seventh Circuit's *Zenner* rule that "requests for sanctions must be filed 'as soon as practicable after discovery of a Rule 11 violation.'" *Id.* 774. The Seventh Circuit held that:

> The timeliness requirement that we established in *Zenner* controls the timing of a party's request for sanctions, and not the timing for the district court's determination of whether the sanction should fall on the signing attorney, the represented party, or both. . . . The district court's

8

> determination that Flaxman, the attorney who signed the sanctionable pleading, should bear a portion of [defendant's] financial burden was not governed by the time restrictions for filing the motion described in *Zenner*. . . . It should have come as no surprise to Flaxman that the court found it appropriate that a part of the sanction should fall on him as the signing attorney. Although [defendant] did not request in its motion that the district court also sanction Flaxman, courts may act sua sponte in imposing sanctions. We hold that Flaxman's allegation of untimeliness is without merit.

*Id.* at 774-75 (citation omitted). Here, as in *Burda*, Defendant filed a timely motion for sanctions and, as in *Burda*, the court will impose *sua sponte* sanctions that differ from those sought through motion practice, but which are nevertheless predictable. The common-law timing rules applicable to a party's motion for sanctions are inapplicable to this situation. The court does not suggest that Sixth Circuit's reasonableness requirement from *In re Ruben* will never apply to a courts considering *sua sponte* sanctions. Indeed, it is axiomatic that courts should act "reasonably."

Instead, in a situation such as this, where sanctions are considered for imposition *sua sponte* after a party's timely sanctions motion, a court's imposition of a *predictable* sanction cannot be simultaneously *unreasonable* due to delay. The court therefore rejects Plaintiffs argument on the timeliness of the court's imposition of *sua sponte* sanctions.

## B. Factual Basis

As mentioned above the court granted Plaintiffs' motion to amend to add the Rosati claim, and, as such, the court determined that it was not futile and would pass 12(b)(6) muster. Accordingly, sanctioning Plaintiffs based on the legal insufficiency of their claim would not be proper. *See In re Ruben*, 825 F.2d at 988-89. But, since the motion to amend was not based on the underlying facts, the court may still consider

9

whether the Rosati claim was factually frivolous. If it was factually frivolous, that finding would support a determination of bad faith.

Plaintiffs argue that there is evidence to support the Rosati claim: (1) Plaintiff Dennis Dubuc's deposition testimony; (2) testimony and affidavits of a few contractors saying they heard Township employees' statements that no further permits would issue; and (3) the timing of the alleged refusal to process applications. Plaintiffs point out that Dennis Dubuc testified during a deposition that: "No, Cindy Dean, I believe was the one that handed me Mr. Rosati's phone number and said that the township lawyers said no permits are going to be issued," (Pls.' Resp. 144.); and "Township officials said, "[o]ur attorneys told us not to issue any more permits," (Pls.' Resp. 177). Plaintiffs offer contractor Michael Kuehnl, who in his affidavit stated that a Township Building Department employee said that "no further permits could be issued," and that an official added that "he might be able to issue a permit but he would have to call the township attorney first." (Pls.' Resp. Ex. 1.) Another contractor, Steven Preston, stated in his affidavit that "Green Oak Township personnel informed me at that time that they were told not to issue anymore permits." (Pls.' Resp. Ex. 4.)

A more thorough examination of Dubuc's deposition, however, provides a clearer picture of his factual claims. He testified that: "it was the position of the Township that no permits should be issued without going through the attorneys. . . . One of the lawyers for the Township wrote back in a pleading that . . . it was the position of the Township that *the parties should go through the attorneys* because Mr. Dubuc's trying to fabricate situations and cases." (Pls.' Resp. Ex. 3 178-80.) (Emphasis added.) Plaintiff added

10

that "If [Rosati] told them not to issue any more permits without going through him, I believe that's unconstitutional." (Pls.' Resp. Ex. 3 182.)

It cannot be disputed that Rosati was not a Township official. He was a private practice attorney acting as outside counsel to the Township. Accordingly, as stated in the court's order to show cause, Rosati would

> not ordinarily [be liable] under § 1983, [but] may become a state actor for purposes of § 1983 if his conduct is "fairly attributable" to the state, *see Memphis, Tenn. Area Local v. City of Memphis,* 361 F.3d 898, 905 (6th Cir. 2004) (setting forth tests for determining whether a private person's conduct is fairly attributable to the state: public function, state compulsion, and nexus), or if there is cooperation or concerted activity between the state and private actors.

Contained in the Order granting Plaintiffs leave to file the amended complaint was a warning challenging Plaintiffs to identify and assemble the admissible evidence they purported to have, or at least to believe existed, supporting the proposition that Rosati's acts were "fairly attributable" to the Township. The evidence cited by Plaintiffs in response to the pending Order does not come close to establishing any of the exceptions to the proposition that a private actor is not ordinarily liable under § 1983.

The contractors' statements do not provide any support for the notion that Rosati was controlling or prohibiting the issuance of permits or acting in concert with the Township to retaliate against Plaintiffs. Preston makes no mention of Rosati, or any other attorney, and simply stated that he was told by one or more Township employees that no more permits would be issued. Kuehnl testified that at first he was told by the "Township Building Department" that no more permits could be issued, but then another person identified as "the building official" spoke to him and stated that they might be able to issue a permit after talking to "the township attorney." The official went into his

11

office to use the phone, and the contractor "became disgusted and left." The court acknowledges that this affidavit evidence does not flatly contradict Plaintiffs' theory that Rosati was "pulling the strings" and ordering denials of permits in retaliation against Plaintiffs, but neither does it reasonably support that theory either directly or by inference. Even accepting Kuehnl's assertions as true, the only conclusion that may be drawn from the testimony is one that is both unsurprising and innocent: Township officials said that they wished to consult with the Township's attorney before taking action. It simply cannot be concluded from these statements that there was a conspiracy abetted by Rosati to exact revenge against Plaintiffs.

The only other evidence that Plaintiffs point to is Plaintiff Dennis Dubuc's deposition. But neither does this evidence support a claim that Rosati had been delegated authority to deny permits or that he was conspiring with the other Defendants to retaliate against Plaintiffs. Indeed, the only conclusion that the testimony supports is that the Township employees and officials sought advice of counsel before acting on permit requests by Plaintiffs. Plaintiff Dennis Dubuc's testimony suggests a very reasonable motive for the Township to have taken on this procedure: "it was the position of the Township that the parties should go through the attorneys because Mr. Dubuc's trying to fabricate situations and cases." This does not amount to retaliation– it amounts only to the prudent strategy to try to limit direct interactions between litigants, one of whom is perceived to be vexatious and obstreperous, in the midst of a contentious lawsuit.

Having now had the opportunity to examine the evidence that Plaintiffs mustered after nearly six months of discovery, the courts finds that the claim against Rosati was a hollow allegation unsupported by fact.

Accordingly, the court turns to the issue of whether Plaintiffs maintained the claim in bad faith. It is of some concern that, by naming Rosati as a defendant, Plaintiffs compelled him to withdraw as counsel. This does not mean that a party may never sue opposing counsel, or that attorneys may invoke their position as an attorney to shield themselves from liability for improper actions related to a lawsuit. A party may sue a defendant, including an opposing attorney, if a sound, good-faith argument for liability exists. And such a good-faith argument exists only so long as it is supported by facts, or at least by the reasonable hope that supporting facts will be discovered. Here, that is not the case. After a long period of discovery, Plaintiffs could not produce any more than the bare allegations of Mr. Dubuc, which, when examined, are utterly insufficient to support a claim against Rosati. Plaintiffs continued the suit for nearly six months even though they possessed no factual support.

Also of concern is that this is not the first time Mr. Dubuc has sued an attorney representing Green Oak Township. In 2000 and 2001, Mr. Dubuc filed two companion suits in federal court related to underlying state cases. *See Dubuc v. Green Oak Tp.*, 312 F.3d 736 (6th Cir. 2002). A Justice of the Michigan Supreme Court took steps to describe Mr. Dubuc's litigation activities:

> I concur in the order granting defendant's motion for sanctions and remanding to the trial court to determine defendant's actual expenses. I write separately to encourage the trial court to consider extraordinary sanctions to deter plaintiff from continuing his vexatious tactics that have led to years of abusive litigation. It appears from the extant records that

plaintiff may not have complied fully with previous orders imposing monetary sanctions.

In the past fifteen years, plaintiff has filed at least ten lawsuits: eight in circuit court, one in federal court, and one before the State Construction Commission involving the same subject matter. In 1985, plaintiff sued Green Oak Township in Livingston Circuit Court, seeking to compel issuance of a building permit for a building on which plaintiff had already begun construction. A consent judgment entered providing for issuance of a building permit and requiring plaintiff to construct the building in compliance with relevant township codes, zoning ordinances, and a revised site plan.

Because plaintiff failed to comply with building and construction codes, the township refused to issue certificates of occupancy. Plaintiff refused to vacate the building. Instead, he filed another lawsuit, seeking mandamus. Again he asserted multiple causes of action. Proceedings were stalled for nearly three years in part because plaintiff moved to disqualify the trial judge. When plaintiff's counsel failed to appear for two scheduled conferences, the trial court imposed sanctions. Plaintiff failed to pay the sanctions, resulting in dismissal.

Meanwhile, the township denied plaintiff's request for another building permit because the approved site plan had expired, the building dimensions differed from the site plan, and the work site did not conform to the site plan. Plaintiff filed yet another lawsuit seeking mandamus to compel issuance of a building permit and damages. The trial court dismissed the case, held plaintiff in contempt of court, and ordered him to vacate the buildings until they passed inspection and received certificates of occupancy.

Plaintiff then filed the instant action, once again seeking a writ of mandamus. The trial court ordered plaintiff to vacate the building, and the Court of Appeals affirmed. Plaintiff next moved to disqualify the trial judge. The judge denied the order, and the chief judge denied plaintiff's appeal. Plaintiff then filed yet another motion for de novo review of the denial of disqualification, which was again denied.

While the circuit court action was abeyed during the pendency of the disqualification motion, plaintiff filed complaints against the township before the State Construction Code Commission. Those proceedings led to thorough inspections of plaintiff's buildings, revealing over one hundred violations. Plaintiff also sought relief in federal court.

When the trial and contempt hearings commenced in Livingston Circuit Court, plaintiff filed three additional motions to disqualify the trial judge and several motions to stay the proceedings, none of which

succeeded. Plaintiff also used the following tactics to delay the proceedings: naming the trial judge as a witness; seeking to depose the judge; accusing the judge of criminal conduct and of conspiring with defense counsel; and threatening to file a complaint with the Judicial Tenure Commission against the judge.

The reports before us indicate that the trial and preliminary hearings consumed at least fifty-four days of court time in addition to the time spent by other judges on plaintiff's disqualification motions. More than fifty days of court time were expended in plaintiff's earlier actions in Livingston Circuit Court. Also, the State of Michigan expended more than $50,000 in processing plaintiff's appeals to the Construction Board of Appeals. An official from that board testified as follows concerning plaintiff's conduct throughout this matter:

The person or entities supervising the construction has no knowledge or expertise in what is required for code compliance and has caused this project to go on as long as it has because of misunderstandings, improper interpretation, interpretations colored by the desire of the party and we incurred much more effort than we normally would simply because the person effecting the corrections did not understand what it was that needed to be done that should have been understood by a proper professional in the design and construction of a building i.e. we inspected many items two or three times simply because it was not understood what the proper correction should be by the person directing the corrections."

Plaintiff has abused the judicial process by filing multiple frivolous lawsuits and then intentionally delaying their progress. Plaintiff's abusive tactics have drained valuable time and financial resources from the Livingston Circuit Court, Green Oak Township, and the State of Michigan. In addition to wasting taxpayers' money, plaintiff has delayed the progress of other cases in Livingston Circuit Court.

Extreme cases like this one require courts to employ sanctions designed to curtail these repeated abuses, especially where it appears that plaintiff may not have complied with past sanctions orders. The trial court here has already awarded over $180,000 in sanctions against plaintiff. The trial court should consider barring plaintiff from pursuing further litigation until any outstanding sanctions are paid. *See In re Cousino*, 603 N.W.2d 636 (1999) (directing the clerks of the trial court, Court of Appeals, and this Court not to accept any pleadings or papers from a litigant in any file regarding a certain estate until all outstanding sanctions, costs, and fees have been paid).

*Dubuc v. Green Oak Tp.*, 609 N.W.2d 829, 830 (Mich. 2000) (Corrigan, J., concurring).

> The court would
> 
> be wrong, of course, to presume that [Mr. Dubuc] misbehaved in this case simply because he has misbehaved in previous cases. Such a presumption would violate the principles that underlie the innocent-until-proven-guilty maxim in criminal cases as well as the general prohibition against the admission of propensity evidence in federal cases. *See* Fed. R. Evid. 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.").

*Dixon v. Clem*, 492 F.3d 665, 679 (6th Cir. 2007); *see also Dubuc*, 312 F.3d at 755. The court here, however, will not rely on past litigation conduct to inform it of Mr. Dubuc's character; that would be to engage in proscribed propensity reasoning. Instead, Mr. Dubuc's past conduct bears properly on his intent and his knowledge. As noted by the Michigan Supreme Court, Mr. Dubuc has maintained or threatened claims against judicial officers, one of which alleged a conspiracy with the opposing counsel. *Dubuc*, 609 N.W.2d at 830. In the 2000 and 2001 federal cases, Mr. Dubuc named a Township attorney as a defendant. These actions evince Mr. Dubuc's knowledge of how to delay and complicate litigation by alleging that those involved with the ongoing litigation have retaliated or otherwise caused some actionable harm. Moreover, the pattern of conduct suggests that he maintains such claims with the bad faith intent to drag out lawsuits and run up legal fees for the opposing parties.

In short, this court finds that the claim against Rosati –which was begun without factual support, was maintained without factual support, and ended without factual support– was pressed in bad faith and with the intent to forcing Rosati to withdraw and thus complicate matters for the Defendant Township and to increase its legal fees. The court reminds Plaintiffs of its second warning concerning the Rosati claim:

16

> As the court noted in the order for which Defendants seek reconsideration, "should actual vexatiousness or similar bad faith . . . be later provably revealed, a corresponding motion for sanctions may well be appropriate." (12/15/08 Order at 6 n.1.) The court takes the allegations regarding Defendants Kruszewski and Rosati as serious. Furthermore, the allegations are made by an attorney who asserts that he is experienced in such matters, and whose client, the court is informed, is also an attorney. Actors such as these must know precisely what they are alleging and are held to know equally well the expense to which they may be put, individually or jointly, in the event that baselessness or vexatiousness in litigation is proven.

(1/28/09 Order at 7 n.7.)

It is now clear, for the first time, that Plaintiffs claim against Rosati was baseless and maintained in bad faith with the intent to multiply the proceedings by forcing Rosati's withdrawal. Plaintiffs and Plaintiffs' counsel must suffer at least a portion of the expense of maintaining such a claim.

### C. Plaintiffs' Remaining Arguments

Plaintiffs' remaining two arguments are easily dismissed. First, Plaintiffs' argument that Defendants named Rosati as "the director of their actions" and therefore should have expected that he would be named in the lawsuit. This argument depends on the purported fact that the Township, et al., delegated authority to Rosatti. As discussed above, there is no factual support for this position. Second, Plaintiffs' argument that the timing of the dismissal of the Rosati was only because the Township issued the permits and therefore "any damages attributed to Rosati's conduct became mitigated" pales by comparison to Plaintiffs' decision to not dismiss the retaliation claim against Defendant Kruszewski. Indeed, the fact that Plaintiffs dismissed the retaliation claim against the private practice attorney but not the township official suggests that the

17

claim against Rosati was brought to force his withdrawal, and once this was accomplished Plaintiffs could dismiss it.

Having determined that there is evidence of bad faith on the part of Plaintiffs and their counsel, the court must determine an appropriate sanction under its inherent authority. Sanctions imposed pursuant to a court's inherent authority may be punitive. *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 647 (6th Cir. 2006). Accordingly, the sanction must be severe enough to have some deterrent effect without being excessive and risking that the sanctioned party would have an inability to satisfy the sanction's terms. The Michigan Supreme Court cited, with approval, a district court's imposition of a nearly $200,000 sanction against Mr. Dubuc. The court notes that, even after this sanction, Mr. Dubuc has continued to maintain frivolous lawsuits against the Township. And while the court is not inclined to impose a sanction of this magnitude, a significant monetary sanction is necessary to effectively punish and deter the sanctioned parties here. The court finds that a $15,000 penalty to be paid to the Township by Plaintiffs, jointly and severally, is sufficient but not excessive. An $5,000 penalty to be paid by Attorney Edward Christensen is likewise sufficient but not excessive.

## VI. CONCLUSION

IT IS ORDERED that Plaintiffs and Plaintiffs' counsel are ORDERED to pay forthwith to Defendant Township compensatory sanctions pursuant to the inherent powers of the court as explained herein, as follows:

Plaintiffs DENNIS DUBUC and CAROL DUBUC, jointly and severally, are ORDERED TO PAY FORTHWITH to Defendant Township the sum of $15,000.

Plaintiffs' principal attorney, EDWARD CHRISTENSEN, is ORDERED TO PAY FORTHWITH to Defendant Township the sum of $5,000.

                                                s/Robert H. Cleland
                                                ROBERT H. CLELAND
                                                UNITED STATES DISTRICT JUDGE

Dated: August 16, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 16, 2010, by electronic and/or ordinary mail.

                                                s/Lisa G. Wagner
                                                Case Manager and Deputy Clerk
                                                (313) 234-5522